No. 22-0419 – *In re S.C. K.R., and E.H.*

**FILED**

**June 15, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

WOOTON, J., dissenting:

The crux of this appeal is whether the circuit court erred in failing to adjudicate Respondent Father as a neglectful parent based on his admitted substance abuse. The majority finds that the West Virginia Department of Health and Human Resources ("DHHR") proved by clear and convincing evidence that his substance abuse harmed or threatened the child's welfare, emphasizing that the inherently dangerous nature of methamphetamine leads to a presumption that a parent who abuses that drug is necessarily neglecting their child. While I agree with the majority that methamphetamine is an extremely dangerous substance, and that it adversely affects children raised by parents who abuse the substance, I write separately because I disagree with the majority's decision to blatantly ignore the lack of evidence linking Respondent Father's drug use to any harm or threatened harm to this child's welfare. I believe that in its zeal to condemn an especially virulent problem the majority has overlooked the statutory standard of proof requiring allegations of abuse and neglect to be proven by clear and convincing evidence before a circuit court may adjudicate parent as abusive/neglectful. *See* W. Va. Code § 49-4-601(i) (Supp. 2022). Therefore, I respectfully dissent.

This Court has long held that in abuse and neglect cases our standard of review is:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.*" Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011) (emphasis added). There was *no* evidence put before the circuit court that this child's welfare was harmed or threatened by the father's drug use. Rather than requiring the DHHR to meet its evidentiary burden, the majority simply presumes that methamphetamine use by a parent necessarily threatens the child's welfare, and effectively holds that the circuit court should have inferred as much, notwithstanding the lack of an evidentiary basis for such a finding. While I do not seek to minimize the abhorrent conduct of Respondent Father, this Court cannot ignore the total lack of any evidence to support a finding of harm or threatened harm. To accept less is to disregard not only our own standard of review, but the statutes that form the basis of our abuse and neglect jurisprudence.

West Virginia Code § 49-4-601(i) plainly dictates that:

At the conclusion of the adjudicatory hearing, the court shall make a determination *based upon the evidence* and shall make findings of fact and conclusions of law as to whether the child is abused or neglected and whether the respondent is abusing, neglecting, or, if applicable, a battered parent, all of which shall be incorporated into the order of the court. *The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.*

(Emphasis added). The circuit court's actions are explicitly governed by this code provision. It must consider only the evidence presented, its conclusions must be based on conditions existing at the time of the filing of the petition, and those allegations must be proven by clear and convincing evidence to properly adjudicate a parent as an abusing or neglectful parent. *See* Syl. Pt. 1, in part, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) ("[W. Va. Code § 49-4-601(i)], requires [the DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].'") (internal citations omitted). As the circuit court properly found, the DHHR did not meet this evidentiary burden.

West Virginia Code section 49-1-201 (Supp. 2022) provides that a "neglected child" is one

[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care, or education, when that refusal, failure, or inability is not due primarily to a lack of financial means on the part of the parent, guardian, or custodian[.]

3

A thorough review of the evidentiary record illustrates that none of these factors were established. The Child Protective Services ("CPS") worker who visited Respondent Father's home prior to the filing of the petition testified that the home appeared to be appropriate for the child, that the child was healthy and receiving appropriate medical care, and that Respondent Father was appropriate and attentive to the child. In this regard, she testified that he provided the child with necessary food, clothing, shelter, medical treatment, and supervision. Admittedly, the worker stated that "in her experience" methamphetamine use impairs parenting abilities, but she explicitly testified that she had *not* witnessed any such impairment here. In fact, she could not identify a single instance in which Respondent Father's substance abuse affected his ability to parent this child. This testimony negates each and every factor set forth in the above definition of "neglected child," and thoroughly rebuts any evidence upon which the circuit court could have adjudicated Respondent Father as neglectful.

The only other evidence regarding conditions existing *at the time of the petition* is a single failed drug screen at the preliminary hearing, and the father's own testimony, wherein he conceded to using methamphetamine approximately twice per week at work, but vehemently denied using any controlled substances in the presence of or while caring for the child.[1] I do not disagree that the evidence of substance abuse weighs against

---

[1] In that regard, the majority posits that even when the child is in the care of a temporary custodian, such as when a child is left with a relative while the parent works or is otherwise absent, the parent who is the designated physical custodian must not be impaired. Logically extended, a custodial parent who has entrusted his or her child to a

4

Respondent Father, but this Court has made abundantly clear that the failure to "link such substance abuse to threatening the health and safety of the children" precludes termination because of substance abuse. *In re J.L.-1 and E.L.*, No. 20-0168, 2020 WL 6482940, \*4 (W. Va. Nov. 4, 2020) (memorandum decision).

The majority finds *J.L-1* factually distinguishable because in that case the DHHR had custody of the children rather than the parent. Even so, that fact does nothing to undercut the reasoning employed in that opinion that evidence of substance abuse must be linked to some harm or threatened harm to the child's welfare in order to adjudicate a parent on that basis. This is supported by our decision in *In re D.A. and J.A.-1*, No. 22-0151, 2022 WL 16549292 (W. Va. Oct. 31, 2022) (memorandum decision), which is not subject to that factual distinction insofar as the respondent father in that case, not the DHHR, was the primary custodian of the children when he allegedly abused drugs. In fact, he tested positive on several occasions for buprenorphine and at least once for Naloxone, amphetamines, and methamphetamine. *Id*. at \*1. Those drug screens were the basis for the DHHR's amended petition alleging that the father subjected the children to "unsafe conditions" and "drug abuse and/or a drug endangered environment." *Id*. Unlike this case, the circuit court in *D.A.* did find that the father's drug abuse alone was sufficient to

---

temporary custodian for a day or a weekend and who becomes impaired (perhaps inebriated from alcohol consumption) during the period the child is with a temporary custodian is an abusing or neglectful parent. While that may be a laudatory goal, it suggests a parenting standard far more rigorous than any authorized by statute.

5

adjudicate him. This Court vacated that order, finding that "simply declar[ing] that petitioner had a substance abuse problem and also had custody of the children, instead of making detailed findings that demonstrated petitioner's substance abuse impacted his parenting ability and harmed or threatened the children" was "insufficient for purposes of adjudication." *Id*. at *2.

The majority addresses *In re D.A.* in a footnote, but summarily disregards it because the circuit court in this case set out detailed findings regarding the father's drug abuse while serving as the child's custodian.  I do not disagree that the circuit court made several findings regarding Respondent Father's substance abuse; rather, the issue is that the circuit court clearly explained that it *could not* make the requisite findings linking his substance abuse to any actual or threatened harm to the child's welfare—findings which were clearly necessary to adjudicate Respondent Father—because the DHHR failed to meet its burden of proof in that regard.  Despite this, the majority of this Court now sanctions (if not explicitly requires) circuit courts to do the very thing we disapproved of in *D.A.*: to wit, to find that evidence of a parent's drug abuse, without anything linking that drug abuse to any harm or threat of harm to the child's welfare, is sufficient to adjudicate that parent as abusive or neglectful.  That is plainly contrary to the statutory requirements governing abuse and neglect proceedings, and to this Court's precedents.  Accordingly, I respectfully dissent.

6